OPINION
{¶ 1} Defendant-appellant Alonzo Leigh appeals from his conviction for Felonious Assault and Burglary. He contends that he was denied a fair trial through inadequate assistance of counsel, prosecutorial misconduct and erroneous evidentiary rulings by the trial court. He also claims that the record does not support the convictions.
 {¶ 2} We conclude that Leigh has failed to demonstrate prejudice arising from any of the claimed instances of prosecutorial misconduct, trial court evidentiary rulings or actions of trial counsel. We further find that the State presented sufficient evidence to support the conviction and that the jury did not lose its way in convicting Leigh. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} On June 28, 2005 and June 29, 2005, Scott Clark was staying at the residence of James Thiel. Both Thiel and Clark were crack cocaine users who sometimes purchased their drugs from Alonzo Leigh. At some point, Leigh left his dog in Thiel's care. The dog gave birth to puppies while in Thiel's care.
 {¶ 4} On June 28, Clark and Thiel took the puppies to various persons and exchanged the puppies for crack cocaine. Later, while at a park with Clark, Leigh learned that the puppies had been traded for drugs. Leigh then hit Clark in the back and on the head with a baseball bat. Clark and Leigh parted company, and Clark returned, on foot, to Thiel's home. Leigh, who had arrived at the residence prior to Clark, again assaulted Clark. Thiel went to a neighbor's home to call the police, and Leigh left the residence.
 {¶ 5} The next day, Thiel and Clark were inside Thiel's residence when Leigh broke into the home. Thiel ran to a bedroom where he locked the door and hid. However, Leigh assaulted Clark with a car jack handle. Clark was able to escape and ran to a neighbor's home to call 911. Following the arrival of the police, Leigh was taken into custody.
 {¶ 6} Leigh was indicted on three counts of Felonious Assault with a deadly weapon and one count of Aggravated Burglary. Following a jury trial, Leigh was convicted of Aggravated Burglary and two counts of Felonious Assault, and was sentenced accordingly. From his conviction and sentence, Leigh appeals.
 II {¶ 7} Leigh's First Assignment of Error is as follows:
 {¶ 8} "APPELLANT'S CONVICTIONS ARE AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} Leigh contends that the State failed to present evidence sufficient to support his convictions and that the convictions are not supported by the weight of the evidence. In support, he contends that the State's witnesses provided testimony that was inherently incredible and riddled by inconsistencies. Specifically, Leigh claims that the testimony of Thiel, Clark and Ritzi Deaton is not believable, given the fact that all three are drug addicts who were ingesting drugs at, or near, the time of the incident. Leigh also contends that because Deaton had reached a deal with the prosecutor regarding a criminal offense for which she had yet to be tried, her testimony is tainted. Finally, he claims that the testimony of all three is inconsistent. Therefore, he contends that his convictions should be reversed.
 {¶ 10} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991 ),61 Ohio St.3d 259: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." In contrast, when reviewing a judgment under a manifest weight standard of review, "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} We have reviewed the entire trial transcript and note that both Clark and Deaton testified that Leigh hit Clark with a baseball bat on June 28, while Clark also testified that Leigh hit him with a car jack handle the next day. Additionally, both Thiel and Clark testified that Leigh made a forced entry into Thiel's residence. Based upon this testimony, we conclude that the State presented evidence sufficient to support the convictions for Felonious Assault and Aggravated Burglary.
 {¶ 12} We next turn to the claim that the convictions are not supported by the weight of the evidence. This argument is based upon the assertion that the testimony of Clark, Thiel and Deaton was not credible. The jury was clearly aware of the drug use of all of these individuals, as well as the deal made by Deaton with the prosecutor. The jury, as the finder of fact, was in the best position to determine credibility issues. Further, the testimony of Montgomery County Deputy Sheriff Shively corroborated the claim that Clark had sustained a wound to his head that was consistent with a blow from a baseball bat and that Clark sustained new injuries the following day. The Deputy also presented testimony which corroborated the claim that Thiel's house had been subject to a break-in. After reviewing the record, we cannot say that the jury lost its way in crediting their testimony in preference to conflicting testimony provided by defense witnesses.
 {¶ 13} Leigh's First Assignment of Error is overruled.
 III {¶ 14} Leigh's Second Assignment of Error is as follows:
 {¶ 15} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 16} Leigh contends that his trial counsel did not render effective assistance at trial. Specifically, he complains that his attorney failed to object to "hearsay or speculative testimony"; that counsel failed to adequately question a juror who overheard part of a witness's telephone conversation during a break in the trial; and that counsel failed to seek a limiting instruction with regard to character evidence.
 {¶ 17} In a direct appeal, with respect to a claim of ineffective assistance of counsel, the record must demonstrate not only that counsel's performance fell below an objective standard of reasonableness, but also that the failure prejudiced the defendant.State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.'
 {¶ 18} We begin with the claim that counsel failed to object to certain testimony. Leigh first complains that counsel failed to object to the following colloquy between the prosecutor and Scott Clark:
 {¶ 19} "Q: You ever seen him [Leigh], uh. . . or observe him dealing drugs?
 {¶ 20} "A: No, sir.
 {¶ 21} "Q: . . . from James' house?
 {¶ 22} "A: No, sir. I — I've heard, but I — I've never seen nothin.' "
 {¶ 23} Leigh claims that this testimony was highly prejudicial because "it had a likelihood of unfairly prejudicing the jury's assessment of [his] character."
 {¶ 24} We disagree. The record shows that both Clark and Thiel testified that Leigh sold drugs to them. Thus, the testimony quoted above added nothing new to the testimony and was not prejudicial. Moreover, trial counsel could have reasonably concluded that interposing an objection would have called undesirable attention to Clark's testimony.
 {¶ 25} Leigh next argues that counsel was ineffective for failing to object to the following questions and answers between the prosecutor and Clark:
 {¶ 26} "Q: Did you ever ask [Leigh] why he was hittin' you with the bat?
 {¶ 27} "A: It was because of the dogs. I guess Ritzi told him somethin.' "
 {¶ 28} Leigh contends that this answer was speculative and non-responsive, and thus, prejudicial. Again, we find that Leigh has failed to prove prejudice because this answer is not speculative as to Leigh's motive for hitting him, because there is evidence in the record to support Clark's assertion that Leigh's attack was provoked by the fact that Clark sold Leigh's dogs. While Clark's statement concerning Ritzi as the source of Leigh's information does appear speculative, this is a gratuitous statement that adds nothing of probative force. Therefore, there was no need to object, and no prejudice resulting from the failure to object, to this part of Clark's answer.
 {¶ 29} Next Leigh claims that counsel was ineffective for failing to adequately question a juror who, during a break in the trial, encountered Thiel in the hallway. The juror — identified as Juror Number One — overheard Thiel make the following statement on his cellular telephone: "Hello, Connie. He saw me." The juror immediately informed the court staff of the encounter. The juror was then called into chambers, where it was adduced that the juror presumed that Thiel had been speaking to Connie Deaton Hill. Hill was a witness for the State at trial and was acknowledged to be a friend of Thiel. The juror did not hear any other portion of the conversation, nor did she relate the incident to any other juror. Upon questioning, the juror further stated that she had not been influenced by the incident, but that she had merely wanted to avoid "any appearance of anything improper." The record reveals that trial counsel did not ask any questions of this juror during the in camera interview.
 {¶ 30} Leigh contends that "it may be reasonably assumed that the words, `he saw me' carried a message that there was something significant about Leigh seeing Thiel." Leigh further contends that "Thiel's voice inflection may have conveyed the impression that he was feeling threatened by [Leigh] or that he was concerned about retribution." Thus, he argues that counsel was ineffective for failing to ask more questions during the in camera inquiry.
 {¶ 31} We find nothing in the record to indicate that the juror was improperly influenced by this incident. Indeed, the record indicates that the juror denied being prejudiced by the incident.
 {¶ 32} Leigh also claims that trial counsel should have objected to the following question and answer by the prosecutor to Ritzi Deaton:
 {¶ 33} "Q: Is there a particular reason why [Leigh] was offering to back you up and support you now?
 {¶ 34} "A: Maybe to help his case."
 {¶ 35} Leigh again argues that this answer was speculative and that it raised the suggestion that Leigh had supported Ritzi with regard to her criminal case in order to "secure her perjured testimony in his case." Thus, Leigh contends that counsel should have raised an objection thereto.
 {¶ 36} After reviewing this entire portion of the transcript, we cannot say that Deaton's answer was speculative. The record shows that Deaton testified that Leigh had asked her to write a false statement with regard to the charged offenses. She also testified that Leigh had offered to "help [her] with whatever [she] was going through with [her criminal case]," and that he had never offered her support in the past. Thus, her answer was merely an attempt to convey her belief that Leigh was attempting to influence her testimony at his trial.
 {¶ 37} Furthermore, counsel may have had a sound reason for not objecting based on the answer's having been speculative. An objection on that basis might have resulted in the witness identifying a convincing, non-speculative reason for having concluded that Leigh's offer of support was a quid pro quo for her favorable testimony in his case. In any event, we fail to see how an objection to this one brief answer would have been likely to change the outcome of the trial.
 {¶ 38} Finally, Leigh contends that counsel was ineffective for failing to request a limiting instruction regarding "evidence of [his] past and present relationships with women and the fact that he had fathered three children by different mothers." He argues that counsel should have asked that the jury "view this impeachment testimony in a proper light — for determining [his] truthfulness — and not to use it to convict him on the basis of exhibiting generally bad character or engaging in a lifestyle of which they may not approve." The evidence to which he objects is found during the following passage from the prosecutor's cross-examination of him:
 {¶ 39} "Q: How many kids did you say you have?
 {¶ 40} "A: I have three.
 {¶ 41} "Q: Three. How old are they?
 {¶ 42} "A: Uh. . . please don't talk about `em.
 {¶ 43} "Q: Well, you spent a long time talkin' about your kids, so I'm gonna ask you a couple questions about `em. Do you have, uh — I guess she'd be about nine now, uh. . . Sheambria?
 {¶ 44} "A: Shiambria.
 {¶ 45} "Q: Shiambria, excuse me.
 {¶ 46} "A: Yes.
 {¶ 47} "Q: Who's her mother?
 {¶ 48} "A: Her mother's name is Latosca Glass.
 {¶ 49} "Q: And you have two other kids? Who's their mother?
 {¶ 50} "A: Yes, none of my kids have the, uh. . . same mother if that's what you're tryin' to get to.
 {¶ 51} "Q: They all have three different mothers [sic]?
 {¶ 52} "A: Yes.
 {¶ 53} "Q: Did you ever be married [sic] to any of these mothers?
 {¶ 54} "A: No."
 {¶ 55} We note that during direct examination, Leigh gave lengthy testimony regarding his relationship with his children, apparently in an effort to paint a picture of himself as a devoted parent. This opened the door for the prosecution to question Leigh regarding his own testimony about his good character. Trial counsel may have decided, as a matter of strategy, not to request a limiting instruction on this issue, so as not to emphasize these facts in the minds of the jurors, or suggest that they were especially damaging to Leigh.
 {¶ 56} Leigh's Second Assignment of Error is overruled.
 IV {¶ 57} Leigh's Third Assignment of Error is as follows:
 {¶ 58} "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BECAUSE OF THE TRIAL COURT'S ERRONEOUS RULINGS."
 {¶ 59} In this assignment of error, Leigh contends that the trial court erred by refusing to limit the prosecution's cross-examination of him with regard to his relationship to the mothers of his children. Specifically, he objects to the prosecutor's questions regarding the fact that he has three children, all of whom have different mothers, and by the fact that he had not married any of the women. He argues that this information was not probative and was highly inflammatory.
 {¶ 60} A trial court has broad discretion in the admission and exclusion of evidence.
State v. Jordan, Franklin App. No. 06AP-96, 2006-Ohio-6224, fl9. Therefore, a reviewing court may not disturb the trial court's ruling in the absence of a determination that the trial court acted unreasonably, arbitrarily or unconscionably. Id., citing Blakemore v. Blakemore
(1983), 5 Ohio St. 3d 217, 219.
 {¶ 61} We note that trial counsel did raise one objection to the prosecutor's line of questioning, and that the objection was overruled. However, as noted above, Leigh opened the door to this line of questioning when he presented testimony designed to bolster his good character by expounding on his trait as a good father to his children. The prosecutor merely asked him further questions about his children and their mothers. We cannot say on this record that the trial court abused its discretion by permitting these questions.
 {¶ 62} Leigh's Third Assignment of Error is overruled.
 V {¶ 63} Leigh's Fourth Assignment of Error is as follows:
 {¶ 64} "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 65} Leigh contends that the prosecutor acted improperly by eliciting "irrelevant testimony concerning [his] past and present relationships with women and the fact that he failed to marry his children's mothers." He further claims that the prosecutor acted improperly by asking him, on cross-examination, whether he had exercised his "right to lie to the police."
 {¶ 66} When analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' " Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219. In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial. State v. Condon, 152 Ohio App. 3d 629,2003-Ohio-2335, ¶ 66.
 {¶ 67} We have reviewed the claim that the prosecutor asked improper questions about Leigh's relationships with the mothers of his children, and note that the questions to which Leigh objects take two pages of a trial transcript that is more than eight hundred pages long. Moreover, as noted above, Leigh opened the door to this line of questioning. We conclude that Leigh has failed to demonstrate either error or prejudice stemming from this line of questioning.
 {¶ 68} We next turn to Leigh's claim that the prosecutor acted inappropriately when he initiated the following exchange during his cross-examination of Leigh:
 {¶ 69} "Q: Well, you talked to Deputy Shively. You talked to Detective Sullins. You wrote a written statement. It doesn't sound to me like you were exercising your right to remain silent. So my question is. . .
 {¶ 70} "A: I was exercising my rights — my rights of the facts. .
 {¶ 71} "Q: So you. . .
 {¶ 72} "A: . . . which were I did not assault Scott Clark at any time.
 {¶ 73} "Q: So you were exercising your right to lie to the police?"
 {¶ 74} A review of this passage reveals that trial counsel interposed an objection that was properly sustained by the trial court. The prosecutor did act improperly by interjecting this question, which characterized Leigh's statement to the police as a lie, into the cross-examination. Because the objection was sustained, this question could only serve as a basis for reversal and retrial if it was so inflammatory that the jury could not have avoided being prejudiced by it. We conclude that it was not so inflammatory. The State's theory of the case, for which it provided evidence, contained the necessary implication that Leigh was lying to the police when he denied having assaulted Clark. Although it was not proper for the prosecutor, in the question, to have characterized Leigh's statement as a lie, it cannot have come as any surprise to the jury that the prosecutor believed Leigh was lying to the police.
 {¶ 75} Leigh's Fourth Assignment of Error is overruled.
 VI {¶ 76} All of Leigh's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and Grady, J., concur.